IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PROGRESSIVE NORTHERN
INSURANCE COMPANY,

    Plaintiff,

v.                                            Civil Action No. 3:25-cv-061

TYESHA N. BROOKS, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the MOTION TO DISMISS (ECF No. 19) (the "MOTION"), the MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (ECF No. 20), SHANKS TOWING SOUTH'S RESPONSE IN OPPOSITION TO PROGRESSIVE'S MOTION TO DISMISS (ECF No. 25), PLAINTIFF/COUNTERCLAIM DEFENDANT PROGRESSIVE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS (ECF No. 26), PLAINTIFF/COUNTERCLAIM DEFENDANT PROGRESSIVE'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS (ECF No. 33), and SHANKS TOWING SOUTH'S REPLY TO PROGRESSIVE'S SUPPLEMENTAL RESPONSE BRIEF (ECF No. 34). Having reviewed the papers and for the reasons set forth below, the MOTION will be GRANTED and COUNT V will be dismissed.

## BACKGROUND

### I. Procedural History

On January 28, 2025, Progressive Northern Insurance Company ("Plaintiff" or "Progressive") filed the COMPLAINT FOR DECLARATORY JUDGMENT (the "COMPLAINT")(ECF No. 1) against Shanks Towing South, LLC ("Shanks") and Tyesha N. Brooks ("Ms. Brooks") (collectively, the "Defendants"). Progressive asks the Court to declare that Progressive has no duty to defend or indemnify Shanks in the underlying lawsuit styled <u>Tyesha N. Brooks v. Shanks Towing South, LLC and John Doe, Case No. CL22005412-00</u>, pending in the Circuit Court for the City of Richmond (the "Underlying Suit").

On February 24, 2025, Shanks filed SHANKS TOWING SOUTH'S ANSWER TO THE COMPLAINT, COUNTERCLAIM, AND CROSSCLAIM (ECF No. 11) (the "COUNTERCLAIM"). The COUNTERCLAIM contained corresponding counterclaims against Progressive and a crossclaim against KER Insurance Group LLC D/B/A ROYAL INSURANCE ("Royal Insurance"). Shanks presents five (5) counts in the COUNTERCLAIM. COUNT I alleges a counterclaim for Breach of Contract against Progressive; COUNT II alleges a crossclaim for Breach of Contract against Royal Insurance; COUNT III alleges a second counterclaim for Breach of Contract against Progressive; COUNT IV asks the Court for Declaratory Judgment against Progressive; and COUNT V alleges that Progressive engaged in a Bad Faith Denial of Coverage under Virginia Code § 8.01-66.1.

2

On March 17, 2025, Progressive filed both the ANSWER TO COUNTER AND CROSS-CLAIM (ECF No. 18) and the MOTION, which is directed only to COUNT V and does not address the remaining counterclaims. In support of the MOTION, Progressive filed the MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (ECF No. 20) ("Progressive Mem."). In response, Shanks filed the SHANKS TOWING SOUTH'S RESPONSE IN OPPOSITION TO PROGRESSIVE'S MOTION TO DISMISS (ECF No. 25) ("Resp."). In reply, Progressive filed the PLAINTIFF/COUNTERCLAIM DEFENDANT PROGRESSIVE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS (ECF No. 26) ("Reply").

On April 29, 2025, the Court entered an ORDER that required the parties to submit supplemental briefing on the applicability of Virginia Code § 8.01-66.1(a) to the present case. On May 16, 2025, Progressive filed the PLAINTIFF/COUNTERCLAIM DEFENDANT PROGRESSIVE'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS (ECF No. 33) ("Progressive Sup. Mem."). On May 23, 2025, Shanks filed the SHANKS TOWING SOUTH'S REPLY TO PROGRESSIVE'S SUPPLEMENTAL RESPONSE BRIEF (ECF No. 34) ("Shanks Sup. Reply").

## II. Factual Background

In September 2021, Shanks obtained a commercial auto insurance policy (the "Policy") with Progressive through Royal Insurance, acting in the role of an insurance agent, that remains in effect to date. ANSWER ¶¶ 4-7. Part I of the Policy provides:

3

> **PART I—LIABILITY TO OTHERS**
> **INSURING AGREEMENT—LIABILITY TO OTHERS**
>
> Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto. However, we will only pay for the covered pollution cost or expense if the same accident also caused bodily injury or property damage to which this insurance applies.
>
> We will settle or defend, at our option, any claim or lawsuit for damages covered by this Part I. We have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

Id. ¶ 9. Under the Policy, Shanks alleges that Progressive agreed to cover Shanks' liabilities, including, but not limited to, "liability to others for bodily injury, property damages, et cetera, which are related to auto accidents up to the Policy's limit of $1,000,000." Id. ¶ 10.

On December 12, 2022, Ms. Brooks filed the Underlying Suit styled <u>Tyesha N. Brooks v. Shanks Towing South, LLC and John Doe</u>, in the Circuit Court for the City of Richmond. Id. ¶ 13. In the Underlying Suit, Ms. Brooks sought damages for an injury to her foot when it was run over by an unidentified individual who was driving an unidentified truck owned by Shanks. Id. ¶ 14.

On May 2, 2024, Ms. Brooks filed a Motion for Default Judgment in the Underlying Suit against Shanks. Id. ¶ 21. On June 14, 2024, Shanks first received notice of the Underlying Suit when it received a copy of the Underlying Suit's Complaint, a Motion for Default Judgment, and a Notice of Hearing on the Motion to be heard on July 24, 2024. Id. ¶ 26. Shanks was not made aware of the filing of the Underlying Suit until June 14, 2024, for one of either two reasons: (1) its mail was not properly delivered to its previous location of operation; or (2) its mail was not properly forwarded to its new main office location. Id. ¶¶ 17-20.

Also on June 14, 2024, Shanks provided its insurance agent, Eric Roeder, with the information that it had about the Underlying Suit. Id. ¶ 28. Eric Roeder is a "Managing Member" of Royal Insurance. Id. Based on representations made by Royal Insurance, Shanks believed that Progressive would be providing Shanks' defense in the Underlying Suit and would cover its liability. Id. ¶¶ 29-30, 32. However, Royal Insurance allegedly sent the information regarding the Underlying Suit to the wrong address, with the result that Progressive took no action to defend the Underlying Suit. Id. ¶ 33.

On July 24, 2024, a final default judgment order was entered against Shanks in the Underlying Suit in the amount of $650,000, with costs of $465.80, and interest at the rate of 6% per annum. Id. ¶¶ 34, 85. By no later than August 7, 2024, Shanks learned of

5

the default judgment order, and began direct correspondence with Progressive about the Underlying Suit. Id. ¶ 35. By no later than September 3, 2024, Progressive hired legal counsel, Tyler Shands, to defend Shanks. Id. ¶ 36. On September 30, 2024, Mr. Shands, on behalf of Shanks, filed a Motion to Set Aside Default Judgment. Id. ¶ 39.

## DISCUSSION

### I. Legal Standard

#### a. Rule 12(b)(6)

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (cleaned up). Fed. R. Civ. P. 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The Court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). So, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570. But, "[a]lthough for the purposes of [a] motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. Twombly, 550 U.S. at 555, 127 S.Ct. 1955. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." Giacomelli, 588 F.3d at 193 (internal quotation marks omitted).

  b. **Statutory Framework: Va Code § 8.01-66.1**

  Virginia Code § 8.01-66.1 is a consumer protection statute that provides individuals with a statutory remedy for arbitrary refusals of motor vehicle insurance claims by insurance companies. § 8.01-66.1 states, in relevant part:

> **A.** Whenever any insurance company licensed in this Commonwealth to write insurance as defined in § 38.2-124 denies, <u>refuses or fails to pay to its insured a property damage claim or medical expense benefit or loss of income benefit claim</u> <u>under the provisions of a policy of motor vehicle insurance</u> and it is subsequently found by the judge of a court of proper jurisdiction that such <u>denial, refusal or failure to pay was not made in good faith, the company shall be liable</u> to the insured in an

7

amount double the amount of the judgment, plus interest from 30 days after the date the claim was submitted in writing to the insurer or its authorized agent, together with reasonable attorney fees and expenses.

B. Notwithstanding the provisions of subsection A, whenever any insurance company licensed in this Commonwealth to write insurance as defined in § 38.2-124 **denies, refuses or fails to pay to a third party claimant**, on behalf of an insured to whom such company has issued a policy of motor vehicle liability insurance, **a claim of $3,500 or less made by such third party claimant** and if the judge of a court of proper jurisdiction finds that the insured is liable for the claim, **the third party claimant shall have a cause of action against the insurance company**. If the judge finds that such denial, refusal or failure to pay was not made in good faith, the company, in addition to the liability assumed by the company under the provisions of the insured's policy of motor vehicle liability insurance, **shall be liable to the third party claimant** in an amount double the amount of the judgment awarded the third party claimant, together with reasonable attorney fees and expenses.

\*\*\*

D. Whenever any insurance company licensed in the Commonwealth to write motor vehicle insurance as defined in § 38.2-124 (i) **denies, refuses, fails to pay, or fails to make a timely and reasonable settlement offer to its insured under the provisions of any uninsured or underinsured motorist benefits coverage** in a policy of motor vehicle insurance applicable to the insured after the insured has become legally entitled to recover or (ii) **after all applicable liability policy limits and underlying uninsured and underinsured motorists benefits have been tendered or paid, rejects a reasonable settlement demand made by the insured** within the policy's coverage limits for uninsured or underinsured motorist benefits **or fails to respond within a reasonable time** after being presented with such demand after the insured has become legally entitled to recover, and it is subsequently found by a court of proper jurisdiction that such denial, refusal, or failure to timely pay or failure to make a timely and reasonable settlement offer, rejection of a reasonable

8

settlement demand, or failure to timely accept a reasonable settlement demand was not made in good faith, in addition to the amount due and owing by the insurance company to its insured on the judgment against the tortfeasor, the insurance company shall also be liable to the insured in an <u>amount up to double the amount of the judgment obtained against the underinsured motorist, uninsured motorist, immune motorist, unknown owner or operator, or released defendant</u> in the underlying personal injury or wrongful death action, not to exceed $500,000, together with reasonable attorney fees for bringing a claim under this subsection, and all costs and expenses incurred by the insured to secure a judgment against the tortfeasor, and interest from 30 days after the date of such denial or failure or the date the reasonable settlement demand was submitted in writing. <u>The insured or the insured's representative may seek adjudication</u> of a claim that the insurance company did not act in good faith <u>as a posttrial motion before the court in which the underlying personal injury or wrongful death judgment was obtained or as a separate action</u> against the company. If the insured or the insured's representative seeks adjudication as a separate action and the underlying judgment is appealed, any action filed under this subsection shall be stayed by the court pending final resolution of the appeal of the underlying judgment.

§ 8.01-66.1 (emphasis added).

### c. Statutory Interpretation under Virginia Law

When interpreting a statute, the "primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." <u>Cuccinelli v. Rector & Visitors of the Univ. of Va.</u>, 283 Va. 420, 425, 722 S.E.2d 626 (2012) (internal quotation marks omitted) (quoting <u>Commonwealth v. Amerson</u>, 281 Va. 414, 418, 706 S.E.2d 879 (2011)). "[W]ords in a statute are to be construed according to their ordinary meaning, given the context in which they are used." <u>City of Va. Beach v.</u>

9

Bd. of Supervisors, 246 Va. 233, 236, 435 S.E.2d 382 (1993) (quoting Grant v. Commonwealth, 223 Va. 680, 684, 292 S.E.2d 348 (1982)). So, "unless faced with an ambiguity or an absurdity, we accord the words of a statute their plain meaning." Hartford Underwriters Ins. Co. v. Allstate Ins. Co., 301 Va. 460, 469, 880 S.E.2d 786, 790 (2022) (citation omitted).

## II. ANALYSIS

Progressive moves to dismiss COUNT V of Shanks's COUNTERCLAIM against Progressive for failure to state an actionable claim under Virginia Code § 8.01-66.1. Progressive presents three arguments as to why each of the possible statutory claims under Va. Code § 8.01-66.1 are inapplicable and, thus, unavailable to Shanks. The Court will analyze each of Shanks' possible claims under the various subsections of § 8.01-66.1.

### A. Va. Code § 8.01-66.1(A)

Progressive argues that Va. Code § 8.01-66.1(A) is inapplicable under the allegations of the COUNTERCLAIM because it only applies to "first party claims," whereby an insured asserts a right to payment under an insurance policy. Progressive Mem. at 4. In the eyes of Progressive, Va. Code § 8.01-66.1(A) only applies if Shanks has a direct claim with Progressive for property damage, medical expense benefits, or loss of income benefits. Id. at 4-5. But what we have here is an obligation of Progressive to indemnify Shanks for a judgment that is to be paid to Ms. Brooks. Id.

10

Whether § 8.01-66.1(A) extends to cover a judgment that is to be paid to Ms. Brooks, a third party, the relevant text of § 8.01-66.1(A) is:

> A. Whenever any insurance company licensed in this Commonwealth to write insurance as defined in § 38.2-124 <u>denies, refuses or fails to pay to its insured a property damage claim or medical expense benefit or loss of income benefit claim</u> under the provisions of a policy of motor vehicle insurance. . . .

(emphasis added). The statute explicitly covers three scenarios, where an insurance company has failed "to pay to its insured": (1) a property damage claim; (2) a medical expense benefit, or (3) a loss of income benefit claim. <u>Id.</u> The determinative question for the Court on this issue is what the plain meaning of the term "to pay to its insured" is.

In <u>Evans v. Geico Gen. Ins. Co.</u>, No. 3:14-CV-659, 2015 U.S. Dist. LEXIS 2696 (E.D. Va. Jan. 9, 2015), this Court found that a plaintiff failed to state a claim under Va. Code § 8.01-66.1(D)(1), a previous version of the statute that has since been amended, because the plaintiff was suing over the refusal and failure of an insurance company to pay a third party rather than to the insured party itself. At that time, Va. Code § 8.01-66.1(D)(1) provided a cause of action when an insurance company "denie[d], refuse[d], or fail[ed] to pay to its insured a claim . . . under the provisions of a policy of motor vehicle insurance issued by such company to the insured[.]" <u>Id.</u> at *26-27 (citing Va. Code § 8.01-66.1(D)(1),

11

amended by Acts 2023, c. 538, eff. July 1, 2024). The Court found that the "express language" of the statute concerned a denial or refusal to "pay to its insured" a claim, and that this language "does not include a failure or refusal to pay to a third party claimant[.]" Id. The interpretation that the Court reached in Evans is further advanced in this case by the "context in which ["to pay to its insured"] is used" in the current text of Va. Code § 8.01-66.1(A). City of Va. Beach, 246 Va. At 236. In Va. Code § 8.01-66.1(A), the Virginia General Assembly made it express that the claim would extend to denials, refusals, and failures of insurance companies "to pay to its insured" specific forms of claims brought under the provisions of a motor vehicle insurance policy. That language is directly juxtaposed with Va. Code § 8.01-66.1(B), which the Virginia General Assembly expressly covered claims for the denial, refusal, or failure "**to pay a third party claimant**, on behalf of an insured to whom such company has issued a policy of motor vehicle liability insurance[.]" (emphasis added).

"In interpreting statutory language, [the Supreme Court of Virginia has] consistently applied the time-honored principle *expressio unius est exclusio alterius*," because this maxim "recognizes the competence of the legislature to choose its words with care." Virginia Department of Health v. NRV Real Estate, LLC, 278 Va. 181, 187-88, 677 S.E.2d 276, 279 (2009). "Under this maxim, 'when a legislative enactment limits the manner in which something

12

may be done, the enactment also evinces the intent that it shall not be done another way.'" Miller & Rhoads Bldg., L.L.C. v. City of Richmond, 292 Va. 537, 544 (2016) (quoting Grigg v. Commonwealth, 224 Va. 356, 364 (1982)). Applying this maxim to the present case, the Virginia General Assembly expressly covered "third party claimants" in Va. Code § 8.01-66.1(B), and limited Va. Code § 8.01-66.1(A) to three specific types of claims to be paid "to the insured." That evinces an intent of the Virginia General Assembly not to extend Va. Code § 8.01-66.1(A) to cover claims made by third parties, which is what Shanks is asking the Court to do.

The decision in Evans correctly interpreted of the term "to pay to its insured" in § 8.01-66.1(A). Here, as in Evans, there is no failure of Progressive to pay Shanks for a property damage claim, a medical expense benefit, or a loss of income benefit claim. Therefore, as to § 8.01-66.1(A), Shanks fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

B. § 8.01-66.1(B)

Next, Progressive argues that § 8.01-66.1(B) cannot form the basis of a statutory claim for Shanks because it provides a claim specifically for third parties, which Shanks is not. Progressive Mem. at 4. Progressive also argues that § 8.01-66.1(B) limits the statutory claim for these third parties to claims of $3,500, and Shanks makes a claim in a principal amount of $650,000. Id. Shanks

13

provides no counter to Progressive's arguments, effectively conceding that § 8.01-66.1(B) does not because Shanks is both a first party claimant and the claim far exceeds the $3,500 limit.[1] Moreover, the statutory text supports the interpretation urged by Progressive. For those reasons, COUNT V fails to state a claim under § 8.01-66.1(B).

C. § 8.01-66.1(D)

Finally, Progressive argues that Va. Code § 8.01-66.1(D) is inapplicable to the present case because it applies only where the insured has made an uninsured or underinsured motorists benefit coverage claim. Progressive Mem. at 5. Shanks counters that view of the statute by arguing that Progressive attempts to shoehorn a requirement of an underlying uninsured or underinsured motorists benefit coverage claim as an additional element of Va. Code § 8.01-66.1(D). Resp. at 7-8. Instead of providing a claim solely in the context of an uninsured or underinsured motorists benefit coverage claim, Shanks proposes that, in enacting Va. Code § 8.01-66.1(D), the General Assembly was "broadening the relief an insured party may seek when an insurance company wrongfully fails to fulfill its obligations by not negotiating, filing in court, or making payments

---

[1] Shanks provides counterarguments to Progressive's arguments on § 8.01-66.1(A) and § 8.01-66.1(D). In comparison, Shanks effectively concedes that § 8.01-66.1(B) is inapplicable by failing to address the issue at any point in its responsive briefing.

14

owed." Id. (citing <u>Chevalier-Seawell v. Mangum</u>, 90 Va. Cir. 420, 423 (Cir. Ct. 2015) ("The statute does not require an aggrieved insured to file a separate civil action against the insurer for relief; to the contrary, it allows relief "'whenever a court of proper jurisdiction' finds that the insurer has refused to pay in bad faith. Va. Code § 8.01-66.1(D)(1).'")). Shanks' interpretation is pulled from the following statutory language: an "insured … may seek adjudication of a claim that the insurance company did not act in good faith as a posttrial motion before the court in which the underlying personal injury … judgment was obtained …" Id. (quoting § 8.01-66.1(D)(1)).

When that text is read in context with the entirety of § 8.01-66.1(D), Shanks' view cannot stand. In its entirety, the statute provides:

> D. Whenever any insurance company licensed in the Commonwealth to write motor vehicle insurance as defined in § 38.2-124 (i) denies, refuses, fails to pay, or fails to make a timely and reasonable settlement offer to its insured <u>under the provisions of any uninsured or underinsured motorist benefits coverage in a policy of motor vehicle insurance</u> applicable to the insured after the insured has become legally entitled to recover or (ii) after all applicable liability policy limits and <u>underlying uninsured and underinsured motorists benefits have been tendered or paid</u>, rejects a reasonable settlement demand made by the insured <u>within the policy's coverage limits for uninsured or underinsured motorist benefits</u> or fails to respond within a reasonable time <u>after being presented with such demand</u> after the insured has become legally entitled to recover, and it is subsequently found by a court of proper jurisdiction that such denial, refusal, or failure to timely pay or failure to make a timely and

15

> reasonable settlement offer, rejection of a reasonable settlement demand, or failure to timely accept a reasonable settlement demand was not made in good faith, in addition to the amount due and owing by the insurance company to its insured on the judgment against the tortfeasor, the insurance company shall also be liable to the insured in an amount up to double the amount of **the judgment obtained against the underinsured motorist, uninsured motorist, immune motorist, unknown owner or operator, or released defendant** in the underlying personal injury or wrongful death action, not to exceed $500,000, together with reasonable attorney fees for bringing a claim under this subsection, and all costs and expenses incurred by the insured to secure a judgment against the tortfeasor, and interest from 30 days after the date of such denial or failure or the date the reasonable settlement demand was submitted in writing. The insured or the insured's representative may seek adjudication of a claim that the insurance company did not act in good faith as a posttrial motion before the court in which the underlying personal injury or wrongful death judgment was obtained or as a separate action against the company. If the insured or the insured's representative seeks adjudication as a separate action and the underlying judgment is appealed, any action filed under this subsection shall be stayed by the court pending final resolution of the appeal of the underlying judgment.

§ 8.01-66.1(D) (emphasis added). The plain meaning of the bolded language necessitates that any claim brought under § 8.01-66.1(D) have an underlying uninsured or underinsured motorist benefits claim.

§ 8.01-66.1(D) breaks down into two sub-sections. Subsection (i) limits itself to claims brought under the "provisions of any uninsured or underinsured motorist benefits coverage in a policy." § 8.01-66.1(D)(i). Thus, it is inapplicable to Shanks claims as there are no claims brought under the "provisions of any uninsured

16

or underinsured motorist benefits coverage." Id.

Subsection (ii) contains the same limitation. Va. Code § 8.01-66.1(D)(ii) begins with the requirement that "all applicable liability policy limits and **underlying** uninsured and underinsured motorists benefits have been tendered or paid." (emphasis added). To find that Subsection (ii) applies beyond uninsured and underinsured motorist benefits claims would require the term "underlying" to be deemed superfluous. But, in this context, the term "underlying" is an adjective used to describe the type of policy on which a claim under § 8.01-66.1(D)(ii) must be based. Underlying, Cambridge Dictionary (Online Ed. 2025) ("Underlying (adjective): used to describe something on which something else is based"). Thus, the plain meaning of the term "underlying" requires that an individual must be basing its claim upon an uninsured or underinsured motorists benefits policy to state a claim under Va. Code § 8.01-66.1(D)(ii).

The continuing requirements of Subsection (ii) also mandate that the claimant be making a claim under an uninsured or underinsured motor vehicle policy. To state a claim under Subsection (ii), an insurance company must reject a settlement demand "within the policy's coverage limits for uninsured or underinsured motorist benefits" or fails to respond to such a demand. § 8.01-66.1(D)(ii) Once again, the statute presupposes that there is an underlying uninsured or underinsured motorist

17

benefits policy.

The context as to what remedy § 8.01-66.1(D)(ii) provides is also insightful as to what the Virginia General Assembly intended to cover. Subsection (ii) provides that, upon a requisite finding of bad faith on the part of the insurance company, a claimant may receive "an amount up to double the amount of the judgment obtained against the underinsured motorist, uninsured motorist, immune motorist, unknown owner or operator, or released defendant." The remedy is tailored directly toward judgments obtained pursuant to underinsured and uninsured motorists policies, thus directly evincing the intent of the Virginia General Assembly to cabin the statute.

Shanks counters that § 8.01-66.1(D) is the Virginia General Assembly's attempt to broaden the relief that is afforded to insured parties that are taken advantage of by insurance companies acting in bad faith. Resp. at 7-8 (citing Chevalier, 90 Va. Cir. at 423 ("The statute does not require an aggrieved insured to file a separate civil action against the insurer for relief; to the contrary, it allows relief "'whenever a court of proper jurisdiction' finds that the insurer has refused to pay in bad faith. Va. Code § 8.01-66.1(D)(1).'")). But the sole support that Shanks cites for this position is Chevalier, which interpreted the version of § 8.01-66.1(D)(1) that has since been heavily amended. Chevalier's interpretation does not provide insight as to how the

18

current statute should apply because the version of § 8.01-66.1(D)(1) enacted in 2002 provided a far more general relief to the public and was not cabined whatsoever by any references to uninsured or underinsured motorists. See Va. Code § 8.01-66.1(D)(1), amended by Acts 2023, c. 538, eff. July 1, 2024

Finally, the Court has analyzed this issue as a matter of first impression because of the amendments to the statutory language of Va. Code § 8.01-66.1(D)(1) in 2024. The Supreme Court of Virginia had previously stated in Manu v. GEICO Cas. Co., 293 Va. 371, 387-88 (2017) that "§ 8.01-66.1(D)(1) applies to any insurance policy as defined in Code § 38.2-124, not just UM policies." As discussed above, Manu was decided before the amendments to Va. Code § 8.01-66.1(D)(1) limited its applicability to claims that have an underlying uninsured or underinsured motorists benefits claim. Va. Code § 8.01-66.1(D)(1), amended by Acts 2023, c. 538, eff. July 1, 2024. In fact, there was no mention of either uninsured or underinsured motorists benefits claim in the text of § 8.01-66.1(D)(1) in 2017. Id. Therefore, Manu provides no binding or, even, persuasive authority on this issue. Hartford, 301 Va. At 469 ("statutory amendments are presumed to amend statutes—to change something that was there or to add something that was not there before.") (internal quotations omitted).

## CONCLUSION

For the reasons set forth above, the Plaintiff's MOTION TO DISMISS (ECF No. 19) will be GRANTED, and COUNT V will be dismissed for failure to state a claim upon which relief can be granted.

                                   /s/ REP
                                   Robert E. Payne
                                   Senior United States District Judge

Richmond, Virginia
Date: June 10, 2025